UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **Securities and Exchange Commission**, | ) | |
| Applicant, | ) ) ) | |
| -v.- | ) ) | Misc. No. 06-0074(ESH) |
| **Dean J. Sheptycki,** | ) ) ) | |
| Respondent. | ) ) | |

### SECURITIES AND EXCHANGE COMMISSION'S REPLY
### MEMORANDUM IN SUPPORT OF APPLICATION
### FOR ORDER REQUIRING OBEDIENCE TO SUBPOENA

#### I.    INTRODUCTION

Respondent Sheptycki's submission to the Court is just another tactic in his systematic effort to frustrate the staff's investigation and evade his legal obligations. As set forth below, Sheptycki's Opposition raises no valid legal basis for him to avoid complying with the subpoena. Contrary to his claims that he was not served, the staff properly served Sheptycki under the applicable rules. Indeed, Sheptycki has attempted to mislead the Court about his presence in Florida in order to avoid appearing for testimony. After more than four months, the Commission respectfully seeks an order compelling Sheptycki to comply with the Subpoena by producing all responsive documents and to appear for testimony.[1]

#### II.    ARGUMENT

In its Application, the Commission has established its burden for enforcement of its investigative subpoena. Respondent does not contest the validity of the subpoena, but instead

---

[1]    Submitted in further support of this Reply is the Second Declaration of Kevin Muhlendorf (hereinafter "Sec. Muhl. Dec.") along with its accompanying exhibits.

asserts two contentions in its Opposition ("Resp. Opp."): (1) that the Commission did not serve him with the subpoena; and (2) that the Commission has no authority to compel a foreign resident to testify in the United States. Neither the law nor the facts supports his positions.[2]

### A.    Respondent was properly served with the subpoena.

Respondent's argument that he has not been served is without merit. The following facts appear to be uncontested: (1) on November 15, 2005, SEC Senior Counsel Kevin Muhlendorf, an officer of the Commission for purposes of the instant investigation, issued a valid subpoena pursuant to a formal order of investigation by the Commission [Sec. Muhl. Dec. ¶ 22]; (2) that same day, Mr. Muhlendorf sent the subpoena via facsimile to a fax number in Respondent's name and located at the Fort Lauderdale, Florida property leased to Respondent [Id., Ex. J; Resp. Opp. at 8]; (3) on November 16, 2006, the subpoena was delivered by Federal Express to the Florida property leased by Respondent where Respondent has authorized Federal Express to leave packages [Id. and Ex. K; Resp. Opp. at 8]; and (4) Respondent, in fact, received actual service of the subpoena [Sec. Muhl. Dec. ¶¶ 22-25]. These facts constitute proper service on Respondent.

Respondent argues that the service by Federal Express was ineffective "for the simple reason that the Respondent had moved to the Bahamas on October 1, 2005." [Resp. Opp. at 6]

---

[2]    The Commission notes that its opening brief addressed personal jurisdiction and minimum contacts because that was the basis raised by Respondent's counsel for Respondent not complying with the subpoena. [Sec. Muhl. Dec. ¶ 25] Even the Declaration of Jeffrey Tew raises jurisdiction rather than service as the basis for noncompliance that he raised. [Tew Dec. at ¶ 3.] Further, the staff's discussions with counsel about a proffer session was *never* related to his jurisdictional challenges as Tew asserts in ¶ 4 of his declaration. Respondent's service argument is disingenuous where his counsel admitted that the staff served his client in Fort Lauderdale. [Id., Ex. M] In fact, Tew even notified the staff of Respondent's presence at his Miami, Florida offices in January 2006 [Sec. Muhl. Dec. ¶ 25], at which the staff could have immediately served Respondent a second time. [Id.] Of course, additional service was not necessary, as Respondent was properly served.

This argument relies on the misplaced supposition that residency is a component of serving an investigative subpoena, although Respondent cites no cases supporting that proposition.

Pursuant to it statutory authority, the Commission has promulgated various regulations and Rules of Practice which, among other things, govern certain procedures related to investigative proceedings. See, e.g., 15 U.S.C. §§ 77s, 78c(b), 78w. Commission Rule 232(c) governs service of subpoenas used in formal investigative proceedings, which requires subpoenas and other papers to be served pursuant to the provisions of Commission Rule 150(b)-(d). See 17 C.F.R. § 203.8; Commission Rule 232(c). Rule 150(c) provides various methods for delivery of service as follows:

> (1) Personal service--handing a copy to the person required to be served; or leaving a copy at the person's office with a clerk or other person in charge thereof, or, if there is no one in charge, leaving it in a conspicuous place therein; or, if the office is closed or the person to be served has no office, leaving it at the person's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein;
> (2) mailing the papers through the U.S. Postal Service by first class, certified, registered, or Express Mail delivery addressed to the person;
> **(3) sending the papers through a commercial courier service or express delivery service; or**
> (4) transmitting the papers by facsimile transmission where the following conditions are met: [3]

See also 17 C.F.R. § 201.150 (c) (emphasis added). Under the Rule, service by commercial carrier is complete upon delivery. Id. at (d). Having delivered the subpoena via commercial courier service addressed to Respondent at a property leased to him and where Federal Express

---

[3] The Commission is not relying on its facsimile service to meet its service obligations under Commission Rule 150(c). The Commission concedes that the conditions contained in Rule 150(c)(4) have not been met. The evidence, however, does support that Respondent received actual notice of the subpoena, which was confirmed as received by a valid facsimile number in Respondent's name, used by Respondent to conduct business, and located at the Fort Lauderdale, Florida property leased to Respondent.

had his signature on file for delivery of packages, the Commission properly served Respondent under the Rules.

     The evidence is overwhelming that serving Respondent at his Fort Lauderdale address was an appropriate place to give him notice of the subpoena. Mr. Muhlendorf's Second Declaration details a body of evidence indicating that Respondent maintains a significant presence where the Commission served him. At the time of service, Respondent leased property at 411 SE Bontona Ave., Fort Lauderdale, FL 33301. [Resp. Opp. at 8; Sec. Muhl. Dec. ¶ 22.] Respondent receives U.S. Mail there and never changed his address after his alleged move. [Sec. Muhl. Dec. ¶¶ 5-6.] Electricity bills in Respondent's name indicate that he received service at that address and continues to do so. [Sec. Muhl. Dec. ¶¶ 7-8.] Since his alleged move, Respondent has maintained residential telephone service at his Fort Lauderdale home and used that service to conduct business from October through December 2005, including business that is the subject of this investigation. [Sec. Muhl. Dec. ¶¶ 9-17.] Respondent transacted securities-related business and sent facsimiles from this address, including wiring money from the sale of securities at issue in this investigation. [Sec. Muhl. Dec. ¶¶ 11-16.] Respondent has continually maintained multiple cell phone lines with South Florida area codes and using his Fort Lauderdale address. [Sec. Muhl. Dec. ¶¶ 18-21, 26.] Respondent also has continually used his Fort Lauderdale home as his address of record for bank and brokerage accounts. [Sec. Muhl. Dec. ¶ 27.] Finally, contrary to his declaration, there is evidence that Respondent in fact *was in South Florida* on November 15-16 when he was served. Compare Sec. Muhl. Dec. ¶¶ 4, 21 with Sheptycki Dec. at ¶¶ 7-8. This evidence refutes Respondent's single piece of evidence, which is his self-serving statement that he no longer resides in Fort Lauderdale.

Further, Respondent does not cite a single case in support of his argument that the staff must serve him at his "residence," nor does the rule have a residency component.[4] And, even if the stricter Fed. R. Civ. P. 4(e) standard applied to investigative subpoenas (which it does not), Respondent's argument that "moving" to the Bahamas in any way limits the Commission's ability to serve him at his Fort Lauderdale address is not supported in law. See, e.g., Ali v. Mid-Atlantic Settlement Svcs, Inc., 233 F.R.D. 32, 36-38 (D.D.C. 2006) (upholding service at each of defendant's mother's house, his former school address, and his new school address and noting that a person may have more than one dwelling house or usual place of abode) (citing National Dev. Co. v. Triad Holding Corp., 930 F.2d 253, 257 (2nd Cir. 1991) (upholding service where defendant resided only 34 days per year)); 131 Main Street Assocs. v. Manko, 897 F. Supp. 1507, 1524 (S.D.N.Y. 1995) (service was proper at apartment where defendant frequently stayed even where he had no ownership interest in it, did not pay rent, and maintained a residence in another jurisdiction for over 14 years); Jaffe and Asher v. Van Brunt, 158 F.R.D. 278, 280 (S.D.N.Y. 1994) (defendant's parents' house qualified as "usual place of abode" since defendant normally resided there when in the area); Karlin v. Avis, 326 F. Supp. 1325, 1329-30 (S.D.N.Y. 1971) (although defendant only used apartment sporadically, service of defendant at apartment was adequate).

---

[4] In fact, the only locations referenced in the rule are in subsection (1), which allow *personal* service by leaving papers at the person's office "in a conspicuous place" or at "the person's dwelling house or usual place of abode," and not their legal residence as Respondent suggests. Thus, the Commission has also effected personal service over Respondent at his office, as that is the corporate offices of Respondent's companies Coyote and South Bay. The Commission notes that, although it cites to cases decided under the Fed. R. Civ. P. 4 standard regarding the "usual place of abode" concept, the Commission is not required to serve its investigative subpoenas under this standard. For example, unlike Rule 4, Commission rules allow service of a subpoena at a person's office or by commercial courier, and personal service is not required.

Finally, Courts have upheld the Commission's service of process under circumstances where the party being served received *actual* notice of service. See SEC v. Marino, 29 Fed. Appx. 538, 2002 WL 93135 (10th Cir. 2002) (although defendant was staying in Costa Rica at the time of service, the court concluded that service at his Las Vegas home was effective in part because he received actual notice); SEC v. Reynolds, 1996 WL 599797 (2nd Cir. Oct. 18, 1996) (finding service valid where defendant regularly received mail and rejecting defendant's bald assertion that he did not reside there); cf. also Ali, 233 F.R.D. at 35 (noting that the service rules should be liberally construed when the defendant receives actual notice). Respondent does not contend that he did not receive actual notice, nor could he. The subpoena was faxed and delivered to an address where he regularly receives mail and conducts business [Sec. Muhl Dec. ¶ 22], and he retained counsel shortly thereafter to respond to the subpoena. [Sec. Muhl Dec. ¶¶ 23-25.]

### B.    Respondent's Country Of Residence Is Irrelevant

Respondent's second argument is that 15 U.S.C. § 78u(b) does not authorize the SEC to compel him to testify in the United States because he is a foreign resident. [Resp. Opp. at 7] Respondent's argument has no basis in the securities laws or the cases he cites. The Commission's broad jurisdictional mandate to protect investors clearly includes jurisdiction over persons who conduct business in the United States, from within or without the United States, and otherwise avail themselves of the United States' securities markets regardless of citizenship.

Nowhere in § 78u(b) is citizenship or residency a factor. Consistent with the statute, the Commission subpoenaed Respondent in the United States – at the property he leases in Fort Lauderdale, Florida at which he resides and/or conducts business. The Commission can compel testimony and production of documents – including from outside the United States – as long as

6

service of the subpoena is made within the territorial limits of the United States. See SEC v. Minas de Artemisa, 150 F.2d 215, 217-18 (9th Cir. 1945) (SEC can require production of documents located outside the US so long as service is within US); Ludlow Corp. v. DeSmedt, 249 F. Supp.496, 500 (S.D.N.Y.) (agency authorized to produce documents located outside the U.S. so long as service is made within the territorial limits of the United States), aff'd sub nom., FMC v. DeSmedt, 366 F.2d 464 (2d Cir. 1966).

The cases cited by Respondent do not support his argument. The issue in most of the cases on which he relies was whether the court had subject matter jurisdiction over a subpoena enforcement action where a non-resident alien was not properly served within the United States. That issue is not present here because Respondent was properly served under the Commission Rules at the property he leases in Fort Lauderdale.

For example, Respondent relies on a misplaced reading of SEC v. Zaganeh, 470 F. Supp. 1307 (D.D.C. 1978). [Resp. Opp. at 7.] Contrary to Respondent's explanation, that case is limited to its facts where the SEC did not *personally* serve the respondent at his office as required by the rule upon which the Commission relied for service at one's office. Thus, it was not solely the respondent's residency that was at issue but the fact that the Commission did not properly serve him. See 470 F. Supp. at 1307. The Commission is not relying on the personal service subsection of the rule here.[5] Further, the court noted, "different considerations might apply in the case of . . . an alien who, unlike respondent, had in some fashion submitted to the SEC's jurisdiction." 470 F. Supp. at 1307. Unlike in Zanganeh, Respondent here was served under the commercial carrier method of service at a location in the United States where he

---

[5] The SEC notes that the service provision upon which it relies in this action was added to the Commission rules in 1995, long after Zanganeh was decided. See 60 Fed. Reg. 32,796 *et seq.* (June 23, 1995); 17 C.F.R. § 201.150 (2006).

maintains an abode and regularly conducts business – all of which subject him to the jurisdiction of the SEC.  Cf., e.g., 15 U.S.C. § 78aa (conferring jurisdiction over all actions to enforce any liability or duty under the Exchange Act and service on defendants wherever such defendant may be found).  The Commission has put evidence in the record that Respondent is subject to the SEC's jurisdiction and which challenges Respondent's assertion that he was not in the United States when he was served.  [Muhl. Dec. ¶¶ 19-25; see generally Sec. Muhl. Dec.]

Respondent's reliance on CFTC v. Nahas, 738 F.2d 487 (D.C. Cir. 1984), is equally unavailing.  The court in Nahas held that the district court lacked jurisdiction to enforce an investigative subpoena served upon a foreign citizen *in a foreign nation*.  Id. at 491.  Here, the Commission did not attempt to serve Respondent extraterritorially, but rather served him within the United States pursuant to 15 U.S.C. §§ 77s(c) and 78u(b) and the Commission Rules promulgated thereunder.  Respondent further misreads Nahas to hold that the analogous statute there "did not authorize the CFTC to compel a foreign resident to appear and produce documents in the United States."  Resp. Opp. at 10.  Respondent's recitation leaves out the lynchpin of the Nahas holding – that enforcement of such subpoenas is improper when "served on foreign citizens *in foreign nations*[.]"  Id. at 495 (emphasis added).  Indeed, the court went on to cite cases that did require production of documents from outside the United States where service occurred within the United States.  Id. (citing SEC v. Minas de Artemisa, 150 F.2d 215 (9th Cir. 1945) (cited infra); Ludlow Corp. v. DeSmedt, 249 F. Supp.496 (S.D.N.Y. 1966) (cited infra); cf. Zanganeh, 470 F. Supp. 1307 (agency could not subpoena alien nonresident where service under

8

the Rules did not occur and individual not within United States).[6]

Finally, Respondent's concluding appeal – that it would be especially problematic to compel Respondent to travel to the United States – is particularly disingenuous in light of the evidence that he has regularly maintained a presence within the United States since his alleged relocation. It is Respondent's actions that have subjected him to the Commission's jurisdiction and this Court's, and his misleading arguments should be given no weight. Because Respondent has not proven a basis for finding that the Commission's demand on Respondent exceeds its lawful limits, the Commission is entitled to this Court's aid in obtaining the evidence it has lawfully subpoenaed. See Penfield Co. of Cal. v. SEC, 330 U.S. 585, 591 (1947).

## IV.   CONCLUSION

Respondent has prevented the Commission from accessing relevant information and documents in an investigation that has been authorized for the protection of investors. Given that Respondent has delayed the Staff's investigative efforts since November, the Commission

---

[6] Respondent similarly offers the Court a misleading quotation from FTC v. Compagne De Saint-Gobain-Pont-a-Mousson, 636 F.2d 1300, 1327 (D.C. Cir. 1980). Not only was the quote offered from a concurring opinion rather than the majority opinion, but Respondent omitted the most crucial portion of the quotation. The concurring opinion states: "The service of an investigative subpoena on a foreign national **in a foreign country** seems to me to be a sufficiently significant act as to require that Congress should speak to it clearly." Id. (emphasis added). Respondent omitted by use of an ellipsis the bolded phrase above, which is central to the holding of the court – that the court lacked jurisdiction because the subpoena at issue was served *abroad* via registered mail. E.g., 636 F.2d at 1307.

respectfully seeks specific deadlines for compliance with its lawfully issued and served subpoena.

**Dated: March 27, 2006**

Respectfully submitted,

_____/s/_____
Stephen L. Cohen (DC Bar No. 478601)
Assistant Chief Litigation Counsel
Attorney for Applicant
SECURITIES AND EXCHANGE COMMISSION
100 F Street, N.E.
Washington, DC 20549-4030
202-551-4472 (phone)
202-772-9245 (fax)
cohens@sec.gov

Of Counsel
Peter H. Bresnan
C. Joshua Felker
Samuel J. Draddy
Kevin B. Muhlendorf
Andrew B. Stevens