UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

Securities and Exchange Commission, )
)
        Applicant, )
)
    -v.- )   Misc. No. 06-0074(ESH)
)
Dean J. Sheptycki, )
)
        Respondent. )
)

---

**SECOND DECLARATION OF KEVIN MUHLENDORF IN SUPPORT OF APPLICATION OF THE SECURITIES AND EXCHANGE COMMISSION FOR AN ORDER REQUIRING OBEDIENCE TO A SUBPOENA ISSUED TO RESPONDENT**

I, Kevin Muhlendorf, pursuant to 28 U.S.C. § 1746, do hereby declare as follows:

1. I am an attorney admitted to the Bar of the District of Columbia and admitted to practice before this Court. I am employed as Senior Counsel by the United States Securities and Exchange Commission ("Commission" or "SEC") in the Division of Enforcement, at the Commission's headquarters office in Washington, D.C.

2. This Declaration is submitted in further support of the Commission's Application for an Order Requiring Obedience to a Subpoena issued to Dean J. Sheptycki, "Sheptycki," and is based on my direct participation in the investigation captioned In the Matter of ArTec, Inc. and Certain Entities Organized by a Shell Creation Group. I have personal knowledge of the facts set forth herein.

3. The statements of others set forth herein are described in substance and in part and not verbatim unless otherwise noted. To the extent that there are assertions herein concerning dates and numbers they are based upon information and evidence gathered to

date. Because the Commission submits this Declaration for the limited purpose of supporting its Application, I have not set forth each and every fact that I know about the investigation.

4.  I have reviewed the Declaration Sheptycki filed with this Court on March 17, 2006 ("Sheptycki Decl"). Among other things, Sheptycki declares that he (1) moved to the Bahamas on October 1, 2005 and (2) was not living or physically present in Fort Lauderdale on November 15, 2005. My review of the facts set out below leads me to believe that Sheptycki was, in fact, physically present in Florida on November 15-16, 2005, and that he continues to conduct business and maintains a residence or usual place of abode in Florida to this day.

5.  On Monday, March 20, 2006, I contacted the United States Postal Inspection Service and spoke with Postal Inspector Kevin Towers. I asked Postal Inspector Towers to determine whether Sheptycki had filed a change of address form with the United States Postal Service in the last 6 months. Postal Inspector Towers reported back to me that he had "requested a search of the Postal Service's computerized change-of-address (COA) system and according to the system, no COA's for Dean Sheptycki at 411 SE Bontona Ave., Ft. Lauderdale, FL 33301 have been submitted in the last 12 months."

6.  On Friday, March 24, 2006, I was contacted by Postal Inspector Sean Bryson, who informed me that he had spoken that morning to the mail carrier for the 411 Bontona Avenue address. The mail carrier indicated that he routinely delivers mail to Sheptycki at that address, and that the mail carrier had mail to deliver to Sheptycki at 411 Bontona Avenue that day.

7.   In response to a subpoena, on March 21, 2006, Florida Power and Light ("FPL") identified Sheptycki as the customer receiving electrical service at the 411 Bontona Avenue address through the March, 2006 billing period. FPL also provided at least three means of contacting Sheptycki, including two Florida numbers, (954) 439-5244 and (954) 463-1278, and an email address DEAN@SOUTHBAYCAPITAL.COM. The first phone number is Sheptycki's Cingular cell phone, which is billed to the same 411 Bontona Avenue address. The second is the same Florida phone number that Sheptycki utilized to open the Coyote Investment Holdings Ltd ("Coyote") bank account with Citibank in Miami. As I stated in my prior declaration, Nevada records indicate that Sheptycki is an officer of both Coyote and South Bay Capital. Sheptycki's FPL account records are attached as Exhibit A.

8.   The FPL production further indicates that Sheptycki made his most recent payment for the electrical service at 411 Bontona Avenue on March 16, 2006 ($300.00). Id. The bills also show that Sheptycki's power usage over the last year has remained relatively constant, between 2342 kilowatt hours ("KWH") and 1251 KWH, including 2806 KWH in the month of October 2005, 2724 KWH in the month of November 2005, and 2296 KWH in the month of December 2005. Id.

9.   I have reviewed billing statements received from BellSouth of a land line account in the name of Dean Sheptycki at his 411 Bontona Avenue address with the number (954) 463-1510 pursuant to a subpoena. The billing address for that number is the 411 Bontona Avenue address and the line is designated under service type as "RESIDENCE." See Exhibit B.

10.  A review of the bill covering the end of September 2005 and part of October

3

2005 reveals that Sheptycki's 411 Bontona Avenue residential land line was utilized to make calls on September 27, 28, and 30 and October 11, 12, 13, 14, and 20, 2005. See Exhibit C. Some of these calls were placed to other numbers known to be associated with the Shell Creation group.

11.     For example, on September 27th at 11:28 am, one minute after sending a signed fax from (954) 252-4676 to the Dallas, Texas broker-dealer for one of Coyote's accounts, Sheptycki called the broker-dealer from the BellSouth landline assigned to 411 Bontona Avenue. Id. The fax instructed the Dallas broker-dealer to wire money from the Coyote brokerage account to the Citibank account for Coyote in Miami, Florida. The fax number is listed as Coyote's fax number on the fax letterhead. The fax letterhead also lists Coyote's phone number as another Florida number, (954) 308-7556. See Exhibit D at BM 7578.

12.     The same sequence occurred on October 20, 2005. That day, at 11:51 am, one minute after sending a fax from the same Coyote fax number, Sheptycki called the Dallas broker-dealer from the BellSouth landline assigned to 411 Bontona Avenue. See Exhibit C. The fax again instructed the Dallas broker-dealer to wire money from the Coyote brokerage account to the Citibank account for Coyote in Miami, Florida. See Exhibit D at BM 7705.

13.     A review of the BellSouth bills covering the month of November 2005 shows continued use and operation of the 411 Bontona Avenue residential land line in that month. See Exhibit E. On November 23, 2005, for example, three calls were placed from this number, including one to the broker-dealer in Florida where Sheptycki maintains a second

brokerage account for Coyote. This account has traded in the securities at issue in this investigation. Sheptycki is the only authorized trader for both Coyote brokerage accounts. See Exhibits F and G.

14. A review of the BellSouth bills covering the month of December 2005, the last month for which I have reviewed records for the 411 Bontona Avenue land line, revealed that Sheptycki placed calls on December 12, 14, 19, and 22, including calls to the broker-dealers for Coyote's brokerage accounts in Dallas and Florida. See Exhibit H. Sheptycki also called Meridian Trust Company, a Turks and Caicos entity related to two other brokerage accounts that traded in securities that are part of this investigation. Coyote's bank records show that Sheptycki has wired money from the Coyote bank account in Miami to the account for Meridian Trust in Turks and Caicos.

15. Moreover, as he did in September and October, Sheptycki faxed a signed wire request on December 19, 2005, to the Dallas broker-dealer and then called the broker-dealer from the 411 Bontona Avenue land line one minute later. This fax also instructed that money be wired to Sheptycki's Coyote bank account in Miami. See Exhibit D at BM 7676.

16. These faxes and phone calls set out in Paragraph's 10-15 above indicate that Sheptycki was at 411 Bontona Avenue on September 27, October 20 and December 19, 2005 conducting securities related transactions and continued to routinely conduct business from the 411 Bontona Avenue address where he was served.

17. On March 20, 2006, BellSouth Subpoena Compliance Assistant Suzette Jackson confirmed that (i) the 411 Bontona Avenue residential number, 954-463-1510, was,

as of that date, a working number and (ii) the bill was current, having been paid as of last month, and (iii) new charges had been incurred during this month's billing cycle.

19. On February 14, 2006, Cingular Wireless ("Cingular") responded to a subpoena by producing bills for two different cellular phone numbers, each identifying Sheptycki as the customer and 411 Bontona Avenue as the billing address. Both phone numbers have South Florida area codes: (954) 439-5244 and (954) 604-0860 (the "Cingular numbers"). Cingular produced the records for the time period January 1, 2005 through the bill ending on January 1, 2006.

19. I have examined the bills for Sheptycki's Cingular numbers, excerpts of which are attached as Exhibit I. For the billing period October 2, 2005 through November 1, 2005, Sheptycki was billed $1408.91 for calls made from or to the Cingular numbers. These bills were for 1,477 minutes of usage time. For the period from November 2, 2005 to December 1, 2005, Sheptycki was billed $852.10 for 1,327 minutes of usage time. The (954) 439-5244 was billed the vast majority of the time, and this number was routinely utilized to contact members of the Shell Creation Group in the second half of 2005. Each bill reflects that the prior month's bill for this usage was paid in full. See Exhibit I.

20. On March 23, 2006, I contacted the Cingular Subpoena Compliance Department and spoke to Legal Compliance Supervisor Sue Bazin ("Bazin"). I asked her to review Cingular's bill for Sheptycki's cell phone, (954) 439-5244, for the period from November 2, 2005 to December 1, 2005. She informed me that, where the bills indicate a call was placed from or received in "MI," the call was placed from or received in its home billing area, Cingular's Miami billing area, which includes Ft. Lauderdale. The exception,

however, is when the phone is outside of its home billing area, such as in the Bahamas, the bills reflect those calls as "Roaming." See Ex. I at 18-22.

21. I specifically directed Bazin to thirty-seven calls placed by Sheptycki's cell phone, (954) 439-5244, on November 15-16, 2005. Bazin stated those calls were not subject to any roaming charges and thus were local calls placed from Cingular's Miami billing area, which includes Fort Lauderdale. Id. at 11-12.

22. Consistent with the requirements for service of an investigative subpoena, I issued an investigative subpoena to Sheptycki on November 15, 2005, and caused it to be delivered to property leased by Sheptycki at 411 Bontona Avenue in Ft. Lauderdale by Federal Express and facsimile. The fax was sent to 954-252-4676, a fax number routinely used by Sheptycki during the relevant time period, as set out in Paragraphs 10-15. The fax confirmation sheet shows that the fax was successfully delivered to that number at 12:05 p.m. on November 15, 2005. See Exhibit J. According to the Federal Express delivery receipt, the subpoena was delivered at 3:39 p.m. on November 16, 2005. See Exhibit K. The receipt indicates that the package was delivered pursuant to a signature release on file. As described above, according to Sheptycki's cell phone records, he was in South Florida on both November 15 and 16, 2005.

23. The wire records for Sheptycki's Coyote account show that on Monday, November 28, 2005, the date the document production was due pursuant to the subpoena, Sheptycki wired $10,000 to attorney Jeffrey Tew's law firm, Tew Cardenas LLP, at 2:45 p.m. See Exhibit L. I received the first call from Mr. Tew indicating he was represented Sheptycki the following day, Tuesday, November 29, 2005. He asked for, and I granted

him, an extension of time to respond to the document production request.

24. As I stated in my first declaration, Mr. Tew first informed me of his position regarding the Commission's jurisdiction over Sheptycki on December 21, 2005. At no time has the Staff ever indicated we agreed with that position. Quite to the contrary, in every call after that, we have indicated to Mr. Tew that we would move to enforce the subpoena if his client failed to comply.

25. Moreover, I have always understood Mr. Tew's position to be that he challenged the Commission's ability to assert personal jurisdiction over Sheptycki because Sheptycki was a Canadian supposedly living in the Bahamas, not because there was an issue with service on Mr. Sheptycki. Mr. Tew's letter to me of January 19, 2006, confirmed this understanding. In that letter he stated "regarding the subpoena **you served** on Mr. Sheptycki, please be advised that Mr. Sheptycki does not agree that the subpoena **you served** on him is legally effective to require him either give testimony or produce documents." See Exhibit M (emphasis added). Had we thought otherwise, we would have served Sheptycki again, such as in January, 2006, when we understood from Mr. Tew that Sheptycki would be in South Florida for a meeting with his attorney.

26. My investigation to date reveals that Mr. Sheptycki has maintained at least six active South Florida phone lines since October 1, 2005.

27. My investigation has revealed that, in the months since Sheptycki claims to have moved to the Bahamas, he has maintained two separate brokerage accounts for Coyote, one in Florida and one in Dallas, Texas. The accounts were utilized to trade securities that are the subject of this investigation through the end of 2005. Sheptycki has also maintained

at least one bank account in South Florida that he also utilized to send and receive wires to individuals and entities that are the subject of this investigation.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on this 27th day of March, 2006, at Washington, D.C.

_____
Kevin Muhlendorf