# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **Securities and Exchange Commission,** | ) | |
| | ) | |
| Applicant, | ) | |
| | ) | |
| -v.- | ) | Misc. No. 06-0074(ESH) |
| | ) | |
| **Dean J. Sheptycki,** | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**EXHIBITS G-H TO SECOND DECLARATION OF KEVIN MUHLENDORF
IN SUPPORT OF APPLICATION OF THE SECURITIES AND EXCHANGE
COMMISSION FOR AN ORDER REQUIRING OBEDIENCE
TO A SUBPOENA ISSUED TO RESPONDENT**

# G

**CCS** Accounts cleared by:

**Computer Clearing Services, Inc.**
801 N. Brand Blvd., Suite 1020, Glendale, CA 91203
Phone: 818.242.8333 • Fax: 818.242.8509 • www.ccs.com

| FOR OFFICE USE ONLY | | |
|---|---|---|
| Account number | Office Code | Representative Code |
| ▉▉▉▉▉ | UD | 03 |

## New Account Application Form

- **Type of Service:**
  ☐ Internet Trading    ☐ Day Trading**    ☑ Retail Trading (Including "Full Service" and "Discount Service")

- **Registration**
  ☐ Individual    ☑ Corporate**    ☐ Partnership**    ☐ Trust**    ☐ Sole Proprietor**    ☐ Estate
  ☐ Joint Tenants with Rights of Survivorship**    ☐ Tenants in Common**
  ☐ IRA*    ☐ ROTH IRA*    ☐ SEP IRA* (Please specify)    ☐ Other _____
  ☐ Custodian* (Enter minor's information in the co-holder's area)
  (* Not available for Day trading customers    ** Additional documents required to open these accounts)

- **Account Type**
  ☑ Cash Account
  ☐ Margin Account

- **Option Trading:**
  ☐ Yes** (Option Agreement on page 2)
  ☑ No

## APPLICATION INFORMATION

| ▶ Account holder (☐ Mr. ☐ Mrs. ☐ Dr. ☐ Company Name ☐ Custodian) | Social Security or Tax I.D. | Date of Birth |
|---|---|---|
| COYOTE INVESTMENT HOLDINGS Ltd | | |

Home Address (P.O. Box insufficient)
411 Bontona Avenue Fort Lauderdale FL 33301

| Mailing Address (If different from above address) | Drive Lic. No. C132 | Passport No. |
| | State FL | Country 343439 2 CANADA |

| Home Phone | Business Phone 954-463-1278 | Email address | Fax No. 252-4676 954-463-1310 | Citizenship ☐ US ☑ Citizen of Canada |
|---|---|---|---|---|

| Employment Status | Marital Status | Number of Dependents | Are you known by any other names? |
|---|---|---|---|
| ☑ Employed ☐ Unemployed ☐ Self-employed ☐ Retired ☐ Student | ☐ Single ☐ Married ☐ Divorced ☐ Other | | ☑ No ☐ Yes |

| Employer Name and Address (If self employed, type of business) | Occupation | How long employed? | |
|---|---|---|---|

## Co-Holder Information

| ▶ Account holder (☑ Mr. ☐ Mrs. ☐ Dr. ☐ Company Name ☐ Minor) | Social Security or Tax I.D. | Date of Birth |
|---|---|---|
| Dean Skeptycki | | |

Home Address (P.O. Box insufficient)

Mailing Address (If different from above address)
Same as above

| Drive Lic. No. State | Passport No. Country |
|---|---|

| Home Phone | Business Phone | Email address | Fax No. | Citizenship ☐ US ☐ Citizen of _____ |
|---|---|---|---|---|

| Employment Status | Marital Status | Number of Dependents | Are you known by any other names? |
|---|---|---|---|
| ☑ Employed ☐ Unemployed ☐ Self-employed ☐ Retired ☐ Student | ☑ Single ☐ Married ☐ Divorced ☐ Others | 0 | ☐ No ☐ Yes |

| Employer Name and Address (If self employed, type of business) | Occupation | How long employed? | |
|---|---|---|---|
| South Bay Capital | Trader | 4 yrs | |

Revised on 5/25/2004

Account holder Initials _____   Joint owner Initials _____
Page 1 of 7

Is any account holder or immediate family member a policy making officer, director or 10% shareholder of a publicly traded company?
☑ No  ☐ Yes

Is any account holder or immediate family member affiliated with any securities firm or exchange, bank, insurance or trust company or the NASD?
☑ No  ☐ Yes

Has any account holder ever filed for arbitration or sought other legal remedies against a brokerage firm?
☑ No  ☐ Yes

## FINANCIAL INFORMATION

▶ **Your annual income**
☐ Under US$25,000
☐ US$25,000 ~ US$80,000
☐ US$80,000 ~ US$150,000
☑ Over US$150,000

▶ **Federal Tax Bracket**
☐ 15%
☑ 28%
☐ 39%
☐ Other _____ %

▶ **Estimate your liquid net worth:**
(Exclusive of residence)
☐ Under US$50,000
☐ US$50,000 ~ US$100,000
☑ US$100,000 ~ US$500,000
☐ Over US$500,000

▶ **Years of investment experience**
☐ 1-5 yrs.  ☐ 5-10 yrs.
☑ 10 yrs. + ☐ Professional trader

▶ **Bank Reference**
Name: Citibank
Acct. No.

▶ **Risk Exposure**
☐ Low
☐ Moderate
☑ Speculation
☐ High Risk

▶ **Investment Objectives**
☐ Income
☐ Long-term growth
☐ Short-term trading
☑ Active or Day trading
☐ Preservation of capital

▶ **Investment Experience (indicate years)**
Stocks  20    Bonds  0
Options  15    Margin  20

▶ **How would you like us to send your confirmations?**
☑ By Mail
☐ eConfirm Online (By WEB and e-mail)

▶ Will this account be managed by anyone other than yourself?
☑ No
☐ Yes (Please fill out trading authorization form)

▶ Are you an employee of this firm? ☑ No  ☐ Yes

▶ Are you related to an employee of this firm?
☐ No
☐ Yes. If yes, list the name of the employee and the relationship:

▶ Do you maintain any other brokerage accounts?
☐ No  ☑ Yes (list firms) _Trade Station Sec_

▶ Tell us how you would like us to process your transactions:
• Proceeds of sales:
  ☑ Hold proceeds of sales in the account
  ☐ Remit proceeds
  ☐ Sweep proceeds into _____
• Dividends:
  ☑ Hold interest and dividends in the account
  ☐ Remit interest and dividends to me/us
• Securities:  ☑ Hold    ☐ Mail

▶ How would you like us to send your statements?
☑ By Mail
☐ Paperless via the Internet

Source of assets to be invested:

## SUBSTITUTE W-9
Under penalties of perjury, I/we certify with our signatures at the bottom of this document (1) that the numbers provided are the payees' correct Tax Identification Numbers and (2) that the payees are not subject to backup withholding (either because the payees have not been notified that the payees are subject to backup withholding as a result of a failure to report all interest or dividends, or the IRS has notified the payees that the payees are no longer subject to backup withholding.)

☐  **MARGIN ACCOUNT**
If checked, I/We request margin privileges for this account and acknowledge that I/we have received, read and understand CCS' Margin Disclosure Document. I/We agree to be bound by the terms and conditions contained in the Margin Agreement, and accept the credit terms that have been disclosed in that document. I/we recognize that credit for this account is extended by Computer Clearing Services, Inc. and may be declined at their sole discretion.

**OPTIONS AGREEMENT (Complete this section if you wish to add options trading to your account)**

▶ Options Investment Objective

Option Approval Requested

☐ Capital Preservation    ☐ Growth    ☐ Covered Call Writing    ☐ Buy Calls, Puts, Straddles and Combinations    ☐ Put and Call Spreads

☐ Income    ☐ Speculation    ☐ Uncovered Put Writing    ☐ Uncovered Calls, Straddles and Combinations

| Account Holder | Co-Account Holder |
|---|---|
| **Options Knowledge:** | **Options Knowledge:** |
| ☐ None    ☐ Limited    ☐ Good    ☐ Excellent | ☐ None    ☐ Limited    ☐ Good    ☐Excellent |
| **Options Investment Style:** | **Options Investment Style:** |
| ☐ Conservative    ☐ Moderate    ☐ Aggressive | ☐ Conservative    ☐ Moderate    ☐ Aggressive |
| **Experience (years):** | **Experience (years):** |
| ____ Covered Writing    ____ Purchases | ____ Covered Writing    ____ Purchases |
| ____ Spreads/Combinations    ____ Uncovered | ____ Spreads/Combinations    ____ Uncovered |
| **Option Trades per year:** | **Option Trades per year:** |
| 12/14/2003 | |
| ☐ 1-5    ☐ 5-20    ☐ 20-40    ☐ 40 – 50    ☐ 50+ | ☐ 1-5    ☐ 5-20    ☐ 20-40    ☐ 40 – 50    ☐ 50+ |

I represent that I am aware of the inherent risks of options trading and that I am financially able to bear such risks and withstand trading losses. I hereby apply for an options account. I agree not to enter into any options transactions until I have received, read and understood the Risk Disclosure Document issued by the Options Clearing Corporation, which has been furnished to me. I am aware of the special risks and obligations of options trading and that such investments are not suitable for all investors. I have read and understand and agree to be bound by the options trading terms and conditions outlined in the attached disclosure agreement both as currently in effect and as amended from time to time.

Sign here to add option trading to your account

| Account Holder | Date | Co-Account Holder | Date |
|---|---|---|---|

I acknowledge under penalty of perjury that all the information I have provided above is true, correct, and accurate and that I will timely update you accordingly if any material change in my financial profile or investment objectives occur.

I represent that I have read the terms and conditions governing this account and agree to be bound by such terms and conditions as currently in effect and as may be amended from time to time. I acknowledge that I have read the Customer Information Document, provided by my broker. I understand that CCS and my broker have entered into a clearing agreement allocating between CCS and my broker various responsibilities with respect to my account.

**THIS ACCOUNT IS GOVERNED BY A PRE-DISPUTE ARBITRATION AGREEMENT WHICH APPEARS IN PARAGRAPH 20 OF THE ACCOUNT AGREEMENT.**

Customer's X _Dan Shotz_    Date _Sep 20/04_    Joint Owner's Signature X ____    Date ____

(All Joint Owners must sign)

**Office Use Only**

| RR Signature | Date | Principal Signature | Date 7/25/07 |
|---|---|---|---|
| | ☐ Registered In state? | | |

| Account Approved for | | | | Approved Options Activity | | | | Date OCC sent |
|---|---|---|---|---|---|---|---|---|
| Cash ☐ | Margin ☐ | Options ☐ | | Covered ☐ | Purchase ☐ | Spreads ☐ | Uncovered ☐ | |
| CCS | | | | ROP Signature | | | | Date |

Revised on 5/25/2004

## ACCOUNT AGREEMENT

To: Computer Clearing Services, Inc. ("CCS" or "you") and my Broker/Dealer:
I represent and agree as follows with respect to my account(s) with you.

1. I am of legal age and unless specifically disclosed to you, no one except me has any interest in my account(s).
2. All transactions for my account(s) shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market where executed, as well as to any applicable federal or state laws, rules and regulations.
3. I have instructed my broker/dealer, as my agent and attorney-in-fact, to open my account(s) with you. I have appointed my broker/dealer my agent and attorney-in-fact to act for and on behalf of me with respect to all matters relating to my account(s) with you, including placing purchase and sale orders and, if applicable, delivering margin and option instructions. I understand that my broker/dealer is not acting as your agent with respect to my account(s). You shall not be responsible or liable for any acts or omissions of my broker/dealer or its employees or agents and I will not hold or attempt to hold you liable for any trading losses.
4. I acknowledge that no fiduciary relationship exists between us. I understand you do not provide investment advice, including advice with respect to the suitability of any transaction, or legal, tax or accounting advice and that your employees are not authorized to give any such advice. I will not solicit or rely upon any such advice from you or your employees.
5. Communications, including confirmations and statements, may be sent to me at the address I have provided or at such other address as I may subsequently provide you and my broker/dealer in writing. All communications so sent shall be deemed to have been given to me personally, whether actually received by me, and I agree to hold you harmless with respect to any losses, costs or expense arising from the receipt of any such communications.
6. Any and all securities and all other property of whatsoever kind belonging to me or in which I may have an interest held by you or carried for my account(s) shall be subject to a general lien for the discharge of my obligations to you, however arising and without regard to whether you have made advances with respect to such property, and without notice to me and may be pledged, re-pledged, hypothecated or re-hypothecated, separately or in common with other securities or any other property, for the sum due to you thereon or for a greater sum and without retaining in your possession and control for delivery a like amount or similar securities or other property also without notice to me.
7. You are authorized, whenever in your discretion you consider it necessary for your protection and/or in the event I die or am incapacitated, pursuant to a petition in bankruptcy or for the appointment of a receiver is filed by or against me, an attachment is levied against my account(s) or pursuant to any order of any exchange, and without notice to me to: a) sell any and all securities and all other property of whatsoever kind belonging to me or in which I may have an interest held by you or carried for my account(s); b) borrow or buy in any securities required to make delivery against any sale effected for me; c) cancel any or all outstanding orders or commitments for my account(s); d) close my account(s); and/or e) apply or transfer any and all securities and all other property of whatsoever kind belonging to me or in which I may have an interest held by you or carried for my account(s), interchangeably between any of my account(s) or account(s) guaranteed by me. Such sales, purchases or cancellations may be made according to your judgment and at your discretion and may be public or private and without advertising and notice to me and in such manner as you may in your discretion determine and you may purchase the property free from any right of redemption and I shall be liable for any deficiency. Any notice, tender or demand given or received shall not constitute a waiver of this provision.
8. I am liable for payment upon demand of any debit balance or other obligation owed in my account(s) or any deficiencies following a whole or partial liquidation, and I agree to satisfy any such demand or obligation. I agree to reimburse you for all reasonable costs and expenses incurred in the collection of any debit balance or unpaid deficiency in my account(s) including, but not limited to, interest, attorneys' fees and costs.
9. You shall not be liable for loss or delay caused directly or indirectly by government restrictions, exchange or market rulings, suspension of trading or other conditions beyond your control, including volatility and trading volumes.
10. No waiver of any provision of this Agreement shall be deemed a waiver of any other provision, nor a continuing waiver of the provision or provisions so waived.
11. I understand that no provision of this Agreement can be amended or waived except by a writing signed by an officer of CCS, and that this Agreement shall continue in force until its termination by me is acknowledged in writing by an officer of CCS, or until written notice of termination by you shall have been mailed to me at my address last given you.
12. If any provision hereof is or at any time should become inconsistent with any present or future law, rule or regulation of any securities exchange, or of any sovereign government or a regulatory body thereof and if these bodies have jurisdiction over the subject matter of this Agreement, such provision shall be deemed to be superseded or modified to conform to such law, rule or regulation, but in all other respects this Agreement shall continue and remain in full force and effect.
13. If this is a joint account, unless all account holders notify you otherwise and provide such documentation as you may require, the account shall be held jointly with rights of survivorship (payable to survivor(s) of us). Each joint tenant irrevocably appoints the other(s) as attorney(s)-in-fact to take all action on his or her behalf and to represent him or her in all respects. You shall be fully protected in acting on the instructions of any of us and each of us shall be liable, jointly and individually, for any amounts due to you, whether incurred by one or all of us.
14. I understand you will disclose my name and address to issuers of securities held in my account(s) so that I can receive information from the issuer. If I do not consent to such disclosure, I will notify you and my broker/dealer in writing.
15. I agree and consent to the electronic recording of telephone conversations with me.
16. Reports of the execution of orders and statements of my account(s) shall be conclusive if not objected to in writing within three days and ten days, respectively, after transmittal to me by mail or otherwise.
17. This Agreement shall inure to the benefit of your successors and assigns, shall be binding on me, my heirs, executors, administrators and assigns.
18. On April 30, 2003, the Department of Treasury (Treasury) and the SEC jointly issued a final rule to implement Section 326 of the USA PATRIOT Act. Section 326 provides that the Treasury and SEC issue a rule that, at a minimum, requires broker/dealers to implement reasonable procedures to: (1) verify the identity of any person seeking to open an account, to the extent reasonable and practicable; (2) maintain records of the information used to verify the person's identity; and (3) determine whether the person appears on any lists of known or suspected terrorists or terrorist organizations provided to broker/dealers by any government agency. The final rule requires each broker/dealer to establish a Customer Identification Program (CIP) to verify the identity of each customer who opens an account. Accordingly, CCS provides notice that it employs third party consumer reporting agencies to review customer account data for the purpose of establishing positive identification of each account as defined by the rule, and for comparison to lists of known terrorists or terrorist organizations.

### 19. PAYMENT FOR ORDERFLOW

CCS receives remuneration (generally in the form of per-share cash payments, or credit against fees in return for orders we route directly) for directing orders in equity securities to particular broker/dealers and market exchanges or centers for execution. Such remuneration is considered compensation to CCS, and the source and amount of any compensation received by CCS in connection with a transaction in your account will be disclosed to you upon written request. A separate written request is required for each transaction. CCS takes a number of factors into consideration in determining where to route customer orders, including speed of execution, opportunities for price improvement, automatic execution capabilities, service levels, and cost of execution. CCS reviews its transactions for quality of execution on an ongoing basis.

### 20. AGREEMENT TO ARBITRATE ALL CONTROVERSIES

**ARBITRATION IS FINAL AND BINDING ON THE PARTIES. THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL. PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS. THE ARBITRATORS' AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED. THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.**

I agree, and by carrying my account(s) you agree, that all controversies that may arise between us, including but not limited to those involving any transaction or the construction, performance, or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration before the National Association of Securities Dealers, Inc. ("NASD"), and in accordance with its rules then in force. Judgment upon the award of arbitrators may be entered in any court, state or federal, having jurisdiction.

It is further agreed that the parties to this Agreement shall not bring a putative or certified class-action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class-action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is decertified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this Agreement except to the extent stated herein.

Revised on 5/25/2004                                                     Account holder initials _____ Joint owner initials _____

**MARGIN AGREEMENT**

**To: Computer Clearing Services, Inc. ("CCS" or "you") and My Broker/Dealer**

1. I agree as follows with respect to all of my accounts in which I have an interest alone or with others, which I have opened or will open in the future, with you for the purchase and sale of securities. I hereby acknowledge that I have read, understand and agree to the terms set forth below. Upon acceptance of my application, I understand that the credit is extended by CCS. All decisions relating to my investment or trading activity shall be made by me or my duly authorized representative. Any information I give CCS on this account agreement will be subject to verification, and I authorize you to obtain a credit report about me at any time. Upon written request CCS will provide the name and address of the credit reporting agency used. I authorize CCS and my broker/dealer to exchange credit information about me. My broker/dealer also may tape record conversations with me to verify data concerning any transactions I request, and I consent to such recording. I also understand that my account is carried by CCS and that all terms of this agreement also apply between me and CCS. I have carefully examined my financial resources, investment objectives and tolerance for risk along with the terms of the margin agreement and have determined that margin financing is appropriate for me. I understand that investing on margin involves extending credit to me and that my financial exposure could exceed the value of my securities.

2. I am of legal age in the state in which I reside and represent that, except as otherwise disclosed to you in writing, I am not an employee of any Exchange or of a Member Firm of any Exchange or the NASD, or of a bank, trust company or insurance company, and that I will notify you promptly if I become so employed.

3. All transactions through CCS are subject to the constitution, rules, regulations, customs and usages of the exchange, market or clearing house where executed, as well as to any applicable federal or state laws, rules and regulations.

4. Any and all credit balances, securities or contracts relating thereto, and all other property of whatsoever kind belonging to me or in which I may have an interest held by you or carried for my accounts shall be subject to a general lien for the discharge of my obligations to you (including unmatured and contingent obligations) however arising and without regard to whether or not you have made advances with respect to such property and without notice to me may be carried in your general loans and all securities may be pledged, repledged, hypothecated or rehypothecated, separately or in common with other securities or other property, for the sum due to you thereon or for a greater sum and without retaining in your possession and control for delivery a like amount of similar securities or other property. At any time you may, in your discretion, without notice to me, apply and/or transfer any securities, contracts relating thereto, cash or any other property therein, interchangeably between any of my accounts, whether individual or joint from any of my accounts to any account guaranteed by me. You are specifically authorized to transfer to my cash account, on the settlement day following a purchase made in that account, excess funds available in any of my other accounts, including but not limited to any free balances in any margin account, sufficient to make full payment of this cash purchase. I agree that any debit occurring in any of my accounts may be transferred by you at your option to my margin account.

5. I will maintain such margins as you may in your discretion require from time to time and will pay on demand any debit balance owing with respect to any of my accounts. I will be liable to you for any deficiencies in such account in the event of the liquidation of such accounts, in whole or in part, by you or the undersigned. Whenever in your discretion you deem it desirable for your protection (and without the necessity of a margin call), including but not limited to extreme market volatility or trading volumes, an instance where a petition in bankruptcy or for the appointment of a receiver is filed by or against me, or an attachment is levied against my account, or in the event of notice of my death or incapacity, or in compliance with the orders of any Exchange, you may, without prior demand, tender, and without any notice of the time or place of sale, all of which are expressly waived, sell any or all securities or contracts relating thereto which may be in your possession, or which you may be carrying for me, or buy any securities or contracts relating thereto of which my account or accounts may be short, in order to close out in whole or in part any commitment in my behalf or you may place stop orders with respect to such securities and such sale or purchase may be made at your discretion on any Exchange or other market where such business is then transacted, or at public auction or private sale, with or without advertising and neither any demands, calls, tenders or notices which you may make or give in any one or more instances nor any prior course of conduct or dealings between us shall invalidate the aforesaid waivers on my part. You shall have the right to purchase for your own account any or all of the aforesaid property at such sale, discharged of any right of redemption which is hereby waived. I understand that my financial exposure could exceed the value of securities in my account.

6. In the absence of a specific demand, all transactions in any of my accounts are to be paid for, securities delivered or required margin deposited, no later than noon Pacific Time on the settlement date. CCS reserves the right to cancel or liquidate at my risk any transaction not timely settled. Margin calls are due on the date indicated regardless of the settlement date of the transaction. For most stocks and bonds, the settlement date is the third business day following the trade date. Settlement dates for U.S. Government issues vary. Options settle on the next business day. Interest will be charged on any debit balance which remains in my account past the settlement date as explained in the Disclosure of Credit Terms section of this Agreement.

7. I agree to be charged interest on any credit extended to or maintained for me by you for the purpose of purchasing, carrying or trading in any security. The annual rate of interest which will be charged on net debit balances will be calculated by means of a formula based on the rate of brokers' call money published in financial sections of newspapers. The annual rate of interest is subject to change without prior notice in accordance with changes in the brokers' call money rate. With the exception of a credit balance in the short or income accounts, all other credit balances in all cash and margin accounts are combined and interest is charged to the margin account on any resulting debit balance. Interest is computed monthly on the net debit balance during the month. If during the month there is a change in interest rates, separate charges will be calculated for each interest period under the different rate. The combining of balances, as well as the actual interest calculations, are done by computer, but interest is arrived at by multiplying the net debit balance by the effective rate of interest divided by 360, times the number of days. In the event there is a decline in the market value of the securities in the margin account, CCS may have to request additional collateral. Generally, such a request for additional collateral will be made to you when the equity in the account falls below 35%. However, you retain the right to require additional margin at any time you deem it necessary or advisable. Any such call for additional collateral may be met by delivery of additional marginable securities or cash. Any securities in any of the accounts of the undersigned are collateral for, any debit balances in the account with you. A lien is created by these debits to secure the amount of money owed you. This means that, in accordance with the terms of this agreement, securities in the said accounts can be sold by you to redeem or to liquidate any debit balances in these accounts.

8. I agree that, in giving orders to sell, all "short sale" orders will be designated as "short" and all "long sale" orders will be designated as "long" and that the designation of a sell order as "long" is a representation on my part that I own the security and will deliver same to you on or before settlement date of the transaction.

9. Reports of the execution of orders and statements of my account shall be conclusive if not objected to in writing within three days and ten days, respectively, after transmittal to me by mail or otherwise.

10. All communications including margin calls may be sent to me at my address given you, or at such other address as I may hereafter give you in writing, and all communications so sent, whether in writing or otherwise, shall be deemed given to me personally, whether actually received or not.

11. I am liable for payment upon demand of any debit balance or other obligation owed in any of my accounts or any deficiencies following a whole or partial liquidation, and I agree to satisfy any such demand or obligation. Interest will accrue on any such deficiency at prevailing margin rates until paid. I agree to reimburse CCS for all reasonable costs and expenses incurred in the collection of any debit balance or unpaid deficiency in any of my accounts including, but not limited to, attorneys' fees.

12. CCS is not liable for any losses caused directly by government restrictions, exchange or market rulings, suspension of trading or other conditions beyond its control including, but not limited to, extreme market volatility or trading volumes.

13. No waiver of any provision of this Agreement shall be deemed a waiver of any other provision, nor a continuing waiver of the provision or provisions so waived.

14. I understand that no provision of this Agreement can be amended or waived except by an officer of CCS, and that this Agreement shall continue in force until its termination by me is acknowledged in writing by an officer of CCS, or until written notice of termination by you shall have been mailed to me at my address last given you.

15. This contract shall inure to the benefit of your successors and assigns, and shall be binding on the undersigned, his heirs, executors, administrators, successors and assigns.

Revised on 5/25/2004

Account holder initials _____  Joint owner initials _____
Page 5 of 7

**CORPORATE RESOLUTION**

RESOLUTION OF: _Coyote Investment Holdings LTD_
(Full Name of Corporation)

On motion duly made and seconded, it was unanimously resolved that the _President_ or the _Secretary_ _____ be and they are hereby authorized on behalf of the Company to accept and convey, assign, transfer, or otherwise dispose of all or any shares, stocks, bonds, debentures, debenture stock and other securities of every description now or hereafter registered in the name of the Company or held or owned by the Company and to sign and execute on behalf of the Company all and any instruments of acceptance and transfer and other documents whenever necessary or proper to effectuate the same with full power to appoint any attorney or attorneys with full power of substitution therein, and that any and all instruments of acceptance and transfer and other documents in connection therewith heretofore signed and executed on behalf of the Company in accordance with the authority set out above are hereby ratified and confirmed. The Company is registered or licensed and in good standing as a corporation under all applicable laws and regulations, foreign or domestic, to which the corporation is subject, including any and all banking relationships or accounts to which the corporation has an interest. The company has all requisite authority to conduct this type of business, including the purchase and sale of securities, under the laws to which the corporation is subject.

**Certificate:** I hereby certify that the foregoing is a true and correct copy of a Resolution duly passed at a meeting of the Directors of:

_Coyote Investment Holdings LTD_
(Name of Company)

regularly held on the _20_ day of _Sep_, 20 _04_ and that the said Resolution is now in full force and effect. I further certify that the following is a list together with specimen signatures of all Directors, officers and employees of the Company authorized by this Resolution.

| _Dean J Sheptydk_ | _President/Secretary_ | _Dean Shepta_ |
|---|---|---|
| (Print Name) | (Title) | (Specimen of Signature) |
| | | |
| (Print Name) | (Title) | (Specimen of Signature) |
| | | |
| (Print Name) | (Title) | (Specimen of Signature) |
| | | |
| (Print Name) | (Title) | (Specimen of Signature) |

**WITNESS** my hand and seal of the Company this _20_ day of _Sep_, 20 _04_

(Corporate Seal)

_Dean Shepta_
Secretary

– *Complete if Applicable* –

I hereby certify that I am the sole signing officer.

_Dean Shepta_

_Rob_

Correspondent Approval

I hereby certify that there is no Corporate Seal.

_Dean Shepta_

_9/21/04_

Date

CCS-Rev: 05/2001

**CERTIFIED COPY OF CERTAIN RESOLUTIONS ADOPTED BY THE BOARD OF
DIRECTORS WHEREBY THE ESTABLISHMENT AND MAINTENANCE
OF TRADING ACCOUNTS HAVE BEEN AUTHORIZED**

RESOLVED-

FIRST: That the President or any Vice President of this Corporation, or _____ or _____ be and they hereby are, and each of them hereby is, authorized and empowered, for and on behalf of this Corporation (herein called the "Corporation"), to establish and maintain one or more accounts, which may be margin accounts with Computer Clearing Services, Inc. (herein called the "Brokers") for the purpose of purchasing, investing in, or otherwise acquiring, selling (including short sales), possessing, transferring, exchanging, pledging or otherwise disposing of, or turning to account of, or realizing upon, and generally dealing in and with

(a) any and all forms of securities including, but not by way of limitation, shares, stocks, bonds, debentures, notes, scrip, participation certificates, rights co subscribe, options, warrants, certificates of deposit mortgages, evidences of indebtedness, commercial paper, certificates of indebtedness and certificates of interest of any and every kind and nature whatsoever, secured or unsecured. Whether represented by trust participating and/or other certificates or otherwise; and

(b) any and all commodities and/or contracts for the future delivery thereof, whether represented by trust participating and/or other certificates or otherwise.

The fullest authority at all times with respect to any such commitment or with respect to any transaction deemed by any of the said officers and/or agents to be proper in connection therewith is hereby conferred, including authority (without limiting the generality of the foregoing) to give written or oral instructions to the Brokers with respect to said transactions; to borrow money and securities and if transactions in commodities are authorized hereby to borrow commodities and/or future contracts in commodities, and to borrow such money, securities, commodities and/or future contracts in commodities from or through the Brokers, and to secure repayment thereof with the property of the Corporation; to bind and obligate the Corporation to and for the carrying out of any contract, arrangement or transaction which shall be entered into by any such officer and/or agent for and on behalf of the Corporation with or through the Brokers: to pay in cash or by checks and/or drafts drown upon the funds of the Corporation such sums as may be necessary in connection which any of the said accounts; to deliver securities, contracts and/or commodity futures to the Brokers; to order the transfer or delivery thereof to any other person whatsoever; and/or to order the transfer of record of any securities or contracts, articles, to any name selected by any of the said officers or agents; to affix the corporate seal to any documents or agreements, or otherwise; to endorse any securities and/or contracts in order to pass title thereto; to direct the sale or exercise of any rights with respect to any securities; to sign for the Corporation all releases, powers of attorney, and/or other documents in connection with any such accounts; and to agree to any terms or conditions to control any such accounts; to direct the Brokers to surrender any securities to the property agent or party for the purpose of effecting any exchange or conversion or for the purpose of deposit with any protective or similar committee, or otherwise; to accept delivery of any securities; contracts and/or commodity futures; to appoint any other person or persons to do any and all things which any of the said officers and/or agents is hereby empowered to do, and generally to do and take all action necessary in connection with the account or considered desirable by such officer and/or agent with respect thereto.

SECOND: That the Broker may deal with any and all of the persons directly or indirectly by the foregoing resolution empowered, as though they were dealing with the Corporation directly.

THIRD: That the Secretary of the Corporation be and he/she hereby is authorized, empowered and directly to certify under the seal of the Corporation, or otherwise, to the Brokers:

(a) a true copy of these resolutions;
(b) specimen signatures of each and every person by these resolutions empowered;
(c) a certificate (which, if required by the Brokers, shall be supported by an opinion of the general counsel of the Corporation, or other counsel satisfactory to the brokers) that the Corporation is duly organized and existing, that its charter empowers it to transact the business by these resolutions defined, and that no limitation has been imposed upon such powers by the By-Laws or any certification.

FOURTH: That the Brokers may rely upon any certification given in accordance with these resolutions, as continuing fully effective unless and until the Brokers shall receive due written notice of a change in or the rescission of the authority so evidenced and the dispatch or receipt of any other form of notice shall not constitute a waiver of this provision, nor shall the fact that any persons hereby empowered ceases to be an officer of the Corporation or becomes an officer under some other title in any way affect the powers hereby conferred. The failure to supply any specimen signature shall not invalidate any transaction if the transaction is in accordance with authority actually granted.

FIFTH: That in the event of any change in the office or powers of persons hereby empowered, the Secretary shall certify such changes to the Brokers in writing in the manner hereinabove provided, which notification, when received, shall be adequate both to terminate the powers of the persons therefore authorized, and to empower the persons thereby substituted.

SIXTH: That the foregoing resolutions and the certificates actually furnished to the Brokers by the Secretary of the Corporation pursuant thereto, be and they hereby are made irrevocable until written notice of the revocation thereof shall have been received by the Brokers.

CCS-Rev. 10/2001

**SECURITY CORPORATION CASH ACCOUNT**

**TO: Computer Clearing Services, Inc.**

The undersigned Corporation, by _Dean Sheptycki_, its President, pursuant to the resolution, a copy of which, certified by the Secretary, is annexed hereto, hereby authorizes you to open an account in the name of said _Coyote Investment Holdings Ltd._ Corporation; and the undersigned represents that no one other than the undersigned has any interest in such account. The undersigned also encloses herewith your Customer Agreement and Options Agreement (if applicable) duly executed on behalf of the Corporation. This authorization shall continue in force until revoked by the undersigned Corporation by a written notice, addressed to you and delivered to your office at 801 North Brand Boulevard, Suite 1020, Glendale CA 91203.

Dated _Sep 20/04_ at _Dallas_        _TX_
              (City)            (State)

Very truly yours,

_Coyote Investment Holdings Ltd_
(Company Name)

By   _Dean Sheptycki_
      (President)

I, _Dean Sheptycki_, being the Secretary of _Coyote Investment Holdings Ltd._, hereby certify that the annexed resolutions were duly adopted at a meeting of the Board of Directors of said Corporation,

duly held on the _1_ day of _Jan_, 20_04_, at which a quorum of said Board of Directors was present and acting throughout and that no action has been taken to rescind or amend said resolutions and that the same are now in full force and effect.

I further certify that each of the following has been duly elected and is now legally holding the office set opposite his name:

_Dean Sheptycki_ President

_____ Vice President

_Dean Sheptycki_ Treasurer

_____ Secretary

I further certify that the said Corporation is duly organized and existing and has the power to take the action called for by the resolutions annexed hereto.

IN WITNESS WHEREOF, I have hereunto affixed my hand this _20_ day of _Sep_, 20_04_

(SEAL)

NO SEAL

_Dean Sheptycki_
Secretary

CCS-Rev. 10/2001

Page 1 of 2









# SECRETARY OF STATE
## STATE OF NEVADA

# CORPORATE CHARTER

I, DEAN HELLER, the duly elected and qualified Nevada Secretary of State, do hereby certify that **COYOTE INVESTMENT HOLDINGS LTD.** did on **March 13, 2001** file in this office the original Articles of Incorporation; that said Articles are now on file and of record in the office of the Secretary of State of the State of Nevada, and further, that said Articles contain all the provisions required by the law of said State of Nevada.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the Great Seal of State, at my office, in Carson City, Nevada, on **March 13, 2001.**

*Dean Heller*

Secretary of State

By *Angela Clark*

Certification Clerk

# H

** BellSouth ** (BST, A00100)

Page 1
DEAN SHEPTYCKI
954 463-1510 382

Monthly Statement
as of January 4, 2006
Account Summary
Previous Balance                                         Amount
Payments (Posted as of January 4)                       160.69
Balance                                                -160.69
                                                           .00
Current Charges Summary:
BellSouth Companies
 BellSouth Local Toll (Page 3)                           36.37
 Long Distance (Page 5)                                  11.83
Total Current Charges (Due January 26)                   48.20
 News You Can Use - Page 6
BellSouth Questions?
 Customer Service:          1 888 757-6500
                                PIN: 2413
Outside Calling Area:       1 800 753-0710
 Repair:                               611
Online:                     www.bellsouth.com
DIRECTV:                    1 800 DIRECTV (1 8

Convenient Payment Options:
Online:                     www.bellsouth.com/
Pay By Phone:               1 888 757-6500
------------------------------------------------------------
Detach & return payment slip with your check, payable to BellSouth in U.S. funds.
Total Amount Due By January 26: $48.20
Yes! I am interested in BellSouth® FastAccess® DSL.
------------------------------------------------------------

P.O. Box 1262
Charlotte, NC
28201-1262

DEAN SHEPTYCKI
411 BONTONA AVE
FORT LAUDERDALE FL  33301-2419


** BellSouth ** (BST, A00100)

Page 2
DEAN SHEPTYCKI
954 463-1510 382

Your Current Charges total is $48.20
  Regulated charges are the minimum you must pay in order to maintain your local telephone service.
  If you do not pay this amount:
  your local service may be disconnected, and
  you may need to pay a charge or deposit to have your service reconnected.
  The amount of Regulated Charges may be obtained by calling 1 888 757-6500.
  If you do not pay the rest of your bill, which includes unregulated charges -- all of which are identified by ** on your bill:
  your local phone service will not be disconnected, and
  you are still responsible for paying these charges.
Late Charge Reminder: A $2.25 Late Payment charge may apply to an unpaid regulated balance and a 1.5% interest charge may apply to an unpaid unregulated balance as of Feb 4.
Terms and Conditions
Recurring eCheck
  I hereby authorize BellSouth Telecommunications, Inc. (BellSouth) to automatically charge my checking account, at the

financial institution name on this application for payment of bills rendered to me by BellSouth. I further authorize the financial banking institution to accept these charges to my checking account. If corrections in the account are necessary, BellSouth reserves the right to terminate my participation in this payment plan. I also understand that I may discontinue enrollment at any time with written notice to BellSouth or by calling after allowing the company and the financial institution a reasonable time to act upon my notification.

e-Bill Enrollment

I agree to receive my BellSouth bill on this website and authorize BellSouth to stop sending me paper bills and notices. I understand that I may receive one more paper bill depending upon my billing cycle. I agree to provide BellSouth with my e-mail address for the receipt of e-Bill notices and to keep the e-mail address updated. I agree to pay my bill using one of these approved methods (since sending paper checks without the remittance stub may delay payment posting): Automatic Payments, MasterCard/VISA, Online Payment from the BellSouth.com website, or Online Payment from my financial institution or bill consolidator. I also understand that I may discontinue enrollment at any time. To de-enroll from BellSouth e-Bill service, select "Billing Options" under the "My Account" tab on the BellSouth.com website.

------------------------------------------------------------------------

Account Number:

954 463-1510 382 1808

Address Correction:

*If your current billing address has changed, please clearly print your new address below:
*Please note that if you need to change the billing name on your account, you will need to contact customer service at one of the numbers shown on page 1.

Check box for Recurring eCheck

Enroll me in BellSouth automatic recurring eCheck! By signing below, I authorize my bank to deduct the monthly amount due on my BellSouth bill from the account shown on the enclosed check and to remit it to BellSouth. Allow 1 - 2 billing cycles for recurring eCheck to begin.

Signature

Date

Check box for e-Bill Enrollment

** BellSouth ** (B8T, A00100)

Enjoy the convenience of receiving an e-mail instead of a paper statement each month. By providing your email address below, you are authorizing BellSouth to enroll your account in e-Bill. For more information about recurring eCheck and about e-Bill, visit www.bellsouth.com/pay

Page 3
DEAN SHEPTYCKI
954 463-1510 382

BellSouth Answersf

BellSouth Answersf packages give you the flexibility to customize your services to fit your needs, great savings, and award winning customer service.

The services included in your BellSouth Answersf package for 954 463-1510 are as follows:
- BellSouthf Long Distance Service
- DIRECTVfl - BellSouth Answersf Savings see your DIRECTV bill
- BellSouth Answersf

For details about services included in your BellSouth Answersf package(s), see the following pages except for DIRECTVfl which can be found on your DIRECTV monthly statement.

Service Provider Summary
Listed below are Local Toll and Long Distance Providers for your line(s).
Line Number              Local Toll Company           Long Distance Company
954 463-1510             BELLSOUTH LONG DISTANCE       BELLSOUTH LONG DISTANCE
Service Provider Contact Number

BellSouth Local and Long Distance
BellSouth BELLSOUTH LONG DISTANCE
Local Monthly Service Charges                                          Amount
  From January 4 through February 3
1. Residential Line                                                     12.45
2. BellSouthf Voice Mail Residential Premium Mailbox                     3.95
3. Call Forwarding Busy Line                            **               1.50
4. Call Forwarding Don't Answer Ring Control                            1.50
5. Message Waiting Indication, Audio/Visual                              .50
6. Listing-Not in Directory or Directory Assistance                    2.08
7. Star 98 Access to BellSouthf Voice Mail                              1.08
Total Local Monthly Service                                            22.98
Other Charges and Credits                                             Amount
Changes made to your service on Dec 13, 2005
8. Payment Convenience Fee                                              2.50

The above charges/credits are one-time charges/credits associated with
your account or with changes made to your account during this billing cycle.
Total Other Charges and Credits                                        2.50

Government Mandated and Authorized Charges
    (For Additional Information See Definitions - Page 7)          Amount
    9.  Federal Excise Tax                                            .79
   10.  FL - State Communications Tax                                 .62
   11.  FL - Local Communications Tax                               1.37
   12.  FL - State Communications Tax                                 .09
   13.  FL - Local Communications Tax                                 .21
   14.  Telecommunications Access System Act Surcharge  **            .15
   15.  Emergency 911 Charge. This charge is billed on behalf of  **  .50
        Broward County.

Total Government Mandated and Authorized Charges                      3.73
Surcharges and Other Fees                                          Amount
    (For Additional Information See Definitions - Page 7)
   16.  FCC Authorized Charge for Network Access                    6.50

**  Unregulated Charge.

** BellSouth ** (BST, A00100)

Page 4
DEAN SHEPTYCKI
954 463-1510 382

BellSouth Local and Local Toll Charges  (continued)

| | Amount |
|---|---|
| Surcharges and Other Fees | |
| 17 Federal Universal Service Charge | .66 |
| Total Surcharges and Other Fees | 7.16 |
| Total Local and Local Toll Charges | 36.37 |

** BellSouth Long Distance, Inc. ** (BSL, CJO377)

```
                                                          Page 5
                                                          DEAN SHEPTYCKI
                                                          954 463-1510 382
```

**Detailed Statement of Charges**

**Other Charges and Credits**
954 463-1510

| Date | | IMSBLC | X | TICKET | ID | GEO CODE | Amount |
|------|---|--------|---|--------|-----|----------|--------|
| 1. 12/26 International Select Value Plan Monthly Fee | | * NL90 | 0 | | | | 5.95 |
| 2. 12/26 Carrier Cost Recovery Fee | | * 8L90 | 0 | | | | .99 |
| 3. 12/26 Federal Universal Service Fund Fee | | * JL90 | 0 | | | | .99 |
| Total Other Charges and Credits | | | | | | | 7.93 |

**BellSouth Long Distance Itemized Calls**

**Direct Dialed Calls**

| Date | Place Called | Number Called | Rate | Time | Min | IMSBLC | X | TICKET | ID | GEO CODE | Amount |
|------|-------------|---------------|------|------|-----|--------|---|--------|-----|----------|--------|
| 4. 12/14 | PROVIDNCFL TI | 649 941-3223 | BD | 1:58PM | 2 | NL2D | 0 & J2 | 8 | | | .96 |
| 5. 12/14 | PROVIDNCFL TI | 649 941-3223 | BD | 2:14PM | 1 | NL2D | 0 & J2 | 5 | | | .48 |
| 6. 12/14 | DALLAS TX | 469 385-9856 | BD | 4:07PM | 1 | JL2D | 0 & J2 | 3 | | | .05 |
| 7. 12/14 | DALLAS TX | 469 385-9856 | BD | 4:13PM | 2 | JL2D | 0 & J2 | 3 | | | .10 |
| 8. 12/14 | DALLAS TX | 469 385-9856 | BD | 4:30PM | 1 | JL2D | 0 & J2 | 2 | | | .05 |
| 9. 12/19 | IRVINE CA | 949 752-7449 | BD | 10:40AM | 1 | JL2D | 0 & J2 | 6 | | | .05 |
| 10. 12/19 | DALLAS TX | 214 520-6534 | BD | 10:45AM | 1 | JL2D | 0 & J2 | 5 | | | .05 |
| 11. 12/19 | SANTA ANA CA | 714 549-2702 | BD | 1:27PM | 1 | JL2D | 0 & J2 | 8 | | | .05 |
| 12. 12/19 | STUART FL | 772 220-6777 | BD | 1:37PM | 1 | 8L5D | 0 & J2 | 1 | | | .05 |
| 13. 12/28 | PROVIDNCFL TI | 649 941-3223 | BD | 11:37AM | 2 | NL2D | 0 & J2 | 1 | | | .96 |
| Total Direct Dialed Calls | | | | | | | | | | | 2.80 |

**Summary of Direct Dialed Calls**
954 463-1510

| | Minutes | Charges |
|---|---------|---------|
| Total Domestic | 8.0 | .40 |
| Total International | 5.0 | 2.40 |
| Total BellSouth Long Distance Itemized Calls | | 2.80 |

**Summary of Charges**

| | Minutes | Charges |
|---|---------|---------|
| Total Domestic Calls for: | | |
| 954 463-1510 | 8.0 | .40 |
| Total International Calls for: | | |
| 954 463-1510 | 5.0 | 2.40 |
| Total Charges | 13.0 | 2.80 |

**Taxes**

| Taxes on Regulated Services | Amount |
|-----------------------------|--------|
| 14. Federal Excise Tax | .32 |
| 15. FL - State Communications Tax | .23 |
| 16. FL - Local Communications Tax | .55 |
| Total Taxes on Regulated Services | 1.10 |
| Total Taxes | 1.10 |

Total BellSouth Long Distance, Inc. Current Charges    11.83
For BellSouth Long Distance, Inc. Billing Questions, Call 1 888 757-6500 or 1 800 753-0710

\* Rate and Tax Codes - Page 7
This portion of your bill is provided as a service to BellSouth Long Distance, Inc..

** BellSouth ** (BST, A00100)

News You Can Use From BellSouth
Disclosures

PAYMENT BY PHONE
Your BellSouth phone bill can now be handled over the phone by electronic check. To make a secure electronic bill payment from your bank account, call BellSouth Customer Service at the number located on the front of your bill. You will need to provide to our Customer Service Representative either your four-digit Personal Identification Number (PIN) shown by 'Customer Service;' on the first page of your BellSouth bill, or the last four digits of the social security number associated with your telephone account. By providing your bank account information and PIN or social security number, you are authorizing BellSouth and your bank or financial institution to process a one-time debit from your bank account for payment of your BellSouth bill. Bill payment options are also available on our Website at bellsouth.com. Thank you for choosing BellSouth for your communications needs.

General Interest
Take control of your time. Discover the new and improved online services available at www.bellsouth.com/eservice.

Planning a move? Move your BellSouth services online. It's the fast and easy way to take your local, long distance, Cingular Wireless&, and Internet service with you. Visit bellsouth.com/move today.

NOTICE REGARDING BILL DISCREPANCY
BellSouth strives to provide our valued customers the best service possible. However, if you have a bill discrepancy, you should notify BellSouth within 60 days after the receipt of your BellSouth bill.

ANNOUNCING IMPROVEMENTS IN YOUR BELLSOUTH BILL!
We continue to listen to our customers and provide answers

by improving our billing. This month you will see
enhancements to the layout and content of your bill. Some
sections have been reworded to make them easier to
understand, while others have been grouped so you can find
the information at-a-glance. We hope you will find your
bill more straightforward and easier to read. Thank you
for being a BellSouth customer. We appreciate doing
business with you.
==================================================

ALREADY HAVE A SECURITY SYSTEM? Add the quality,
reliability and safety of our monitoring to your current
system for as low as $19.95 a month, one of the lowest
prices in the industry! Enjoy the outstanding value
you'll receive from BellSouth Security Systems from
Protection One by calling us today at 1 866 585-0551 or
visit bellsouth.com/safely. Some restrictions apply) call
for details.
==================================================

** BellSouth ** (BST, A001100)

Page 7
DEAN SHEPTYCKI
954 463-1510 382

Definitions
For additional information, please visit our website www.bellsouth.com
Emergency 911 Service
    Your local government asked you to pay a small charge each month to help provide for emergency service in your community.
FCC Authorized Charge for Network Access
    A charge to recover costs associated with connecting to a telecommunications service provider's interstate network.
Federal Universal Service Charge
    This is a per line charge to recover the amount telecommunications providers must contribute to the Federal Universal Service
    Fund, which helps keep local phone rates affordable for all Americans.
Telecommunications Relay Service
    A surcharge to fund the relay center that provides hearing/speech impaired customers the ability to communicate with others.
To make a payment:
    Pay online @www.bellsouth.com/pay OR write your account number on your check payable in U.S. funds to BellSouth and mail it
    to:

    BellSouth
    P.O. Box 1262
    Charlotte, NC 28201-1262

TRC
A = Federal Tax Only           H = Federal, State and Local      P = Person
B = Federal and State Tax      I = State and Local Tax           R = Standard*
C = Calling Card               J = Local Only                    S = Station
D = Day                        K = Federal and Local Tax         T = Discount*
E = Evening                    M = Multiple Rate Periods         X = Conference
F = Call Forward               N = Night/Weekend                 Y = Economy*
G = State Tax Only

                                * International